UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GUERWIN E. WEEKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-404 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

After three overseas deployments, Navy Veteran Guerwin Weekes returned to the United States in 2010. While only 32 years old, he found himself suffering from severe pain and mental distress. He applied for social security disability benefits, claiming that he was no longer able to work as of March 1, 2010, but the Commissioner denied his application. Weekes filed this action seeking review of that decision. For the following reasons, the Court reverses and remands this action for further proceedings.

### I. FACTUAL BACKGROUND

Since 2010, Weekes has sought medical treatment through the health administration of the U.S. Department of Veterans Affairs for anxiety, depression, post-traumatic stress disorder ("PTSD"), and pain in his ankles, back, and right shoulder and knee (Tr. 360-1294). One of his treating psychiatrist's has opined that his PTSD and major depressive disorder result in poor concentration and memory, difficulty with organization, flashbacks, insomnia, low energy, anxiety, and depressed mood, which were all likely to impact his functioning and school performance (Tr. 1036). Despite the problems caused by his mental illnesses, Weekes oftentimes decided not to take his psychotropic medications. He did so because they caused him to feel

drugged and tired, and sometimes he did not find the medications to be helpful (Tr. 45, 74-75, 794, 800). He also did not take pain medications because he experienced negative reactions. *Id*.

The only consultative examinations of record occurred in July 2015 (Tr. 792-804). The physical examination by Dr. Gupta noted in relevant part that Weekes suffered from fatigue and a loss of concentration. Dr. Gupta diagnosed Weekes with a history of right shoulder problems, bilateral tendonitis, left foot bone spurs, neck spurs, and PTSD, but Dr. Gupta did not bother to assess particular functional limitations suffered by Weekes. The mental status exam performed by licensed psychologist, Dr. Hershberger, noted that Weekes demonstrated a "dysphoric mood" and his attention and concentration "were surprisingly poor, given his presentation." Weekes reported that he wasn't sure if his VA treatment for PTSD had been successful for him. Dr. Hershberger diagnosed Weekes with moderate to severe PTSD, but opined that Weekes' self-reports did not support a diagnosis of depressive disorder.[1] Dr. Hershberger believed that Weekes could perform simple, repetitive tasks, so long as they did not exacerbate his current physical pain (including pain in his back, shoulder, and feet). Dr. Hershberger also noted that Weekes' stress tolerance appeared to be below average due to PTSD.

State reviewing agents disagreed with Dr. Hershberger and opined that Weekes was capable of performing semiskilled tasks at the light exertional level with no close, ongoing contact with a large number of people (Tr. 122-149). The agents' explanations for their decisions pointed out Weekes' current successful performance in college as a full-time student, and the fact that Weekes had stopped taking his psychotropic medications which revealed noncompliance with treatment.

---

[1] A comprehensive psychiatric evaluation and VA treatment notes from March/April 2016 again confirmed that Weekes suffered not only from PTSD, but severe major depressive disorder (Tr. 1288-98).

After reviewing the entirety of the medical records and hearing Weekes testify during a supplemental administrative hearing, licensed psychologist and impartial medical expert, Dr. Michael Lace, opined that despite suffering from PTSD and major depression, Weekes could perform routine, repetitive tasks with below average emphasis on production quotas (Tr. 103-14, 1231-41).

Ultimately, the ALJ found that Weekes' severe impairments of PTSD, depression, right knee disorder, degenerative disc disease of the spine, and history of ankle deformity, bilateral tendonitis, bone spurs, and right shoulder disorder, in combination with his non-severe impairments, did not render Weekes disabled because he was still able to perform light exertional work (subject to a number of restrictions, including performance of only unskilled to semiskilled tasks that were free of "fast-paced production and quota," and only entailed superficial interactions with co-workers and supervisors and occasional superficial contact with the public). Based on testimony from a vocational expert, the ALJ concluded that a person with that residual functional capacity would still be able to perform unskilled work as a bench assembler, electronics worker, and electrical assembler. The VE testified that consistent with the Dictionary of Occupational Titles, these jobs existed in significant numbers.[2] Given the VE's testimony, the ALJ found that Weekes could perform work that existed in significant numbers in the national economy and therefore denied his claim for disability benefits. The Appeals Council denied review, so Weekes filed this action, asking that the Commissioner's decision be reversed with an award of benefits or remanded for further proceedings.

---

[2] The VE also testified that if the exertional capacity level were reduced to sedentary, then a person could perform work as an assembler, product stuffer, or eyewear polisher—all of which existed in significant numbers, as well.

3

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a

"logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work

5

under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Weekes argues that reversal is required given the ALJ's overlooking evidence supporting further mental impairments, and the ALJ's failing to support the credibility determination with substantial evidence. The Court agrees that remand is required because the RFC analysis was affected by the ALJ's credibility analysis, which itself was not supported by substantial evidence. Given this shortcoming, the Court leaves it to the parties to address on remand whether Weekes' mental impairments (and, for that matter, obvious left ankle problems) would otherwise further limit Weekes' ability to perform work.

Per Weekes' testimony, aside from suffering from pain that keeps him from sitting, standing, and walking for any more than an estimated thirty minutes, he also suffers from disabling PTSD, anxiety, and depression (Tr. 64-75, 91-105). During three tours of duty as a corpsman charged with securing the wounded and deceased, he saw friends and colleagues tragically die during combat. He now suffers from repeated nightmares which cause him to lash out and prevent him from falling back to sleep. Days and weeks are marred with a lack of desire to get out of bed. If Weekes takes his medication to reduce the frequency of the nightmares, then he feels drugged, tired, and can't function. Thus, he has periods of good days and bad days. Weekes also experiences anxiety around large groups of people, and he suffers from anxiety attacks roughly once a week. Those attacks result in a lack of focus and concentration. Weekes has found painting and creating artwork to be therapeutic for his mental health issues. And

6

although he has participated in mental health therapy, he has had a difficult time processing the various combat-related episodes which cause him the most problems. In fact, during his supplemental administrative hearing, Weekes recalled for the first time an incident wherein a Humvee behind his unit hit an IED, after which he had to retrieve his fallen comrades and place them into body bags. Weekes' driver relayed that had Weekes stepped out into that location, as he had intended, then Weekes, too, would have been killed. But Weekes never processed this tragedy (from his first deployment) with any therapists. Weekes actually didn't seek help from the VA until he realized that he had started abusing his dog. Thereafter, Weekes considered taking his own life, but then decided to seek help instead because he didn't want his mother to suffer too. Weekes testified that the tragedies of combat and feeling of guilt never leave him, and now he feels "surrounded by faceless individuals that scare [him]." Despite this testimony and evidence of record, the ALJ found that Weekes' conditions could reasonably be expected to cause some of his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with and supported by the evidence of record (Tr. 31).

Because the ALJ is in the best position to determine a witness' truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the

7

reasons for that weight. SSR 16-3p (superseding SSR 96-7p)[3]; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Pepper*, 712 F.3d at 367; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

Here, the ALJ discounted Weekes' "psychological impairments, and his PTSD symptoms" because: (1) despite Weekes' claiming that he had not fully disclosed all that he had experienced during his deployments, Weekes did in fact "disclose details of his experiences in active combat" per Exhibit 24F, page 48; and (2) despite Weekes' claiming to suffer from flashbacks and disturbing memories, Weekes "drives to and from school, attends IU South Bend for fine arts, drawing and painting, is active at church, goes to the church potluck monthly and helps with clean up afterwards, volunteered at the Elkhart Soup Kitchen, and regularly helps his mother's baking business selling her baked goods at the Farmer's Market" per Exhibit 4F, page 87; and additionally, Weekes "was volunteering at hospice, spent a month in Italy on a trip that was organized by his school, attended his grandmother's funeral in the Caribbean, volunteers at a local museum, has plans to show his drawings in an exhibition next year, and recently rescued a shelter dog" per Exhibit 10F, page 78 and Exhibit 24F, pages 14 and 18 (Tr. 31). The Court will now explain why the ALJ's credibility determination is not supported by substantial evidence.

First, the ALJ wholly misconstrued the nature of Weekes' combat-related disclosures during therapy. While it is true that Weekes had previously disclosed a second-deployment

---

[3] In March 2016, the Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p. However, under either SSR version, the outcome in this case would be the same.

mission involving a comrade by the name of "Preach" and other comrades who were killed, this tragedy is unmistakably different than the deadly mission that Weekes suppressed and recalled only during the administrative hearing (Tr. 92-94, 98, 877, 891, 1291). Because the ALJ inaccurately assessed Weekes as having fully disclosed his combat-related experiences despite claims that he hadn't, the ALJ's stated reason for discrediting Weekes in this respect does not actually exist.

Second, in discounting Weekes' allegations concerning the persistence and limiting effects of his mental health problems, the ALJ heavily relied on the fact that Weekes was taking full-time college courses, but did so without discussing the actual limitations that Weekes confronted. Specifically, the ALJ repeatedly noted that Weekes is not as limited as he reports because he is a full-time student studying fine arts. Yet, the ALJ failed to acknowledge the nonlinear path taken by Weekes in pursuit of a college degree. First, Weekes began majoring in pre-dental studies in 2010. He began struggling with classes and dropped out of school. After his mother convinced him to re-enroll in fine arts, Weekes resumed classes in 2014 and took advantage of services offered by the Office of Disability, which allowed Weekes to take tests at his own pace or in a quiet room. Despite this, Weekes still misses class on account of having nightmares. At one point, he even took an entire summer off. Eventually, Weekes passed the basic courses and progressed to performing hands-on artistic works, which he has found to be therapeutic for him. At the time of his first hearing, Weekes anticipated earning a degree in 2017. Thus, it was error on the part of the ALJ (and the reviewing agents), to mischaracterize Weekes as a successful full-time college student, while ignoring these additional facts revealing that Weekes' college endeavor has been frequently interrupted by his mental problems—which, in

9

turn, would tend to support his claimed debilitating psychiatric and functional limitations. *See Myles*, 582 F.3d at 676.

Third, in assessing Weekes' credibility, the ALJ relied heavily on various sporadic activities participated in by Weekes primarily in the summer of 2013, 2014, and 2016 (and relating to his creating art, attending church events, taking trips, and volunteering to help others). But in doing so, the ALJ did not address how these activities necessarily translated into an ability to consistently work full-time, nor did the ALJ sufficiently explain how the ability to perform these activities are inconsistent with Weekes' testimony concerning the severity of his mental impairments. *Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017) (indicating that the dearth of information about what the plaintiff did, how she did it, and for how long of a period of time renders the ALJ's reliance on the various activities unreasonable); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (finding that the ALJ erred in concluding that the claimant's vacation undermined her claim of stroke-related impairments); *see also Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("[I]t is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment . . . ."). Thus, the ALJ erred by reasoning that performance of these therapeutic activities[4] somehow equate to an ability to work full-time without adequately explaining what the activities actually entailed. *See id.* Such a shortcoming is significant because, by way of example, the VE testified that even with an RFC that precluded "fast-paced production and quota," an employee would still be

---

[4] Treatment notes indicated that Weekes should continue his current coping strategies for PTSD because they were "working well." (Tr. 1170). Those coping mechanisms included drawing, painting, and baking, as these activities took his mind off of his PTSD symptoms, allowed him to sleep better, and decreased his nightmares, while counseling was not as effective. *Id*.

10

required to meet end of the day goals on a consistent basis (Tr. 80). Yet, Weekes' testimony that he regularly suffers from fatigue, poor concentration, and good/bad days, combined with the fact that it took him over seven years to earn a bachelor's degree, are seemingly inconsistent with the pace needed for full-time work. Therefore, in discrediting Weekes, it was incumbent upon the ALJ to provide more information about Weekes' other activities and lifestyle.

Elsewhere in the opinion, the ALJ seemingly discredited Weekes (as did the reviewing agents) because Weekes admitted to not taking his psychotropic medications as prescribed (Tr. 29, 122-149). Yet, in faulting Weekes for not regularly taking his medications, the ALJ did not also recite the reasons for Weekes' failure to follow a treatment plan, and thus, should not have drawn negative inferences from this failure. *See Myles*, 582 F.3d at 677; *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft*, 539 F.3d at 679. This is especially important here because Weekes testified that the psychotropic medications made him feel drugged and kept him from getting out of bed for classes the following morning. Weekes also indicated that some of the medications were not even helpful. But, again, the ALJ made no mention of these facts at the times that she emphasized Weekes' noncompliance with taking his medications.

That leaves only the medical evidence as a rational for Weekes' allegations and that, alone, cannot provide the basis for a finding that those allegations are not credible. *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017). Therefore, the Court cannot conclude that the ALJ's decision to discount Weekes' self-reports were supported by substantial evidence. That error is not harmless. If, on remand, the ALJ decides to give greater weight to Weekes' subjective complaints and limitations, that could result in a more restrictive RFC finding.

Accordingly, the remedy for the shortcomings noted herein is further consideration, not an award of benefits as requested by counsel.[5]

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: September 17, 2018

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court

---

[5] On remand, the ALJ should also consider whether Weekes' ongoing left ankle pain and recent request for surgical intervention would result in any additional limitations (Tr. 897-901, 1203, 1216, 1249-53, 1258-59, 1271). Furthermore, since the ALJ included a limitation in Weekes' RFC indicating that he could "never climb ladders, ropes or scaffolds," such a limitation should have been included in the hypotheticals posed to the VE, so that the VE could properly determine which jobs fit within the designated RFC. And finally, the Court recognizes that the ALJ is entitled on remand to again give weight to Dr. Lace's consultative opinion, but the ALJ must also support her credibility determination with substantial evidence.